John A. Snow (#3125) jsnow@parsonsbehle.com
PARSONS BEHLE & LATIMER
201 S. Main St. Ste. 1800
Salt Lake City, UT 84111
Telephone (801) 536-6111

T. Edward Cundick (#10451) tec@clydesnow.com
CLYDE SNOW & SESSIONS
201 S. Main St. Ste. 1300
Salt Lake City, UT 84111
Telephone: (801) 322-2516

Attorneys for Amicus Curiae Albert Pranno

_____

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>CHAD A. PASSA & LISA M. HART,<br><br>Debtors. | Bankruptcy Case No. 14-25369<br>(Chapter 13)<br>Judge William T. Thurman |
| KELLY G. CLARK,<br><br>Appellant,<br>vs.<br><br>CHAD A. PASSA<br>LISA M. HART,<br><br>Appellees. | United States District Court<br>Case No. 2:18-cv-00006-DN<br><br><br>Judge David Nuffer |

**REPLY BRIEF OF AMICUS CURIAE ALBERT PRANNO,
URGING REVERSAL**

1

{01532411-1 }

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

LEGAL ARGUMENT .................................................................................................................... 1

    I.   The Code, the Discharge Order, and Logic Demand Reversal .................................... 1

CONCLUSION ............................................................................................................................... 5

# TABLE OF AUTHORITIES

Page(s)

Cases

*C & W Asset Acq. V. Feagins (In re Feagins)*, 439 B.R. 165 (Bankr. D. Haw. 2010) ....... 5
*Eastburg v. Eastburg (In re Eastburg),* 447 B.R. 624 (10th Cir. BAP 2011) ..................... 6

Statutes

11 U.S.C. § 524(a)(1) and (2) ................................................................................................ 3

Rules

Federal Rule of Bankruptcy Proceduer 4007(b) ............................................................. 3, 5

## Introduction

In the Appellant's and Appellees' briefs,[1] the parties to this action have managed to complicate what should be a rather simple issue: can a bankruptcy court sanction a creditor for seeking to collect a particular debt after the debtors receive a bankruptcy discharge, without first determining whether the debt the creditor sought to collect was in fact discharged? Logic suggests not. The bankruptcy code suggests not. The discharge order suggests not. But that is exactly what the bankruptcy court erroneously did. The error should be corrected, and the ruling reversed with instruction to dismiss the motion without prejudice.

## Legal Argument

### I.   The Code, the Discharge Order, and Logic Demand Reversal

Appellees argue that the issue of whether the Conspiracy Judgment and the Domestic Judgment[2] were dischargeable was not properly before the bankruptcy court.[3] Even Appellant confuses the issue by suggesting "Rule 4007(b) [which states that a determination of dischargeability on issues like those in this case can be made at any time] is in tension with § 524(a)(2), which enjoins any act that attempts to collect on a debt discharged under § 1328, 'whether or not discharge of such debt is waived'…."[4] But in fact, the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the discharge

---

[1] Amicus has no issue with sections I, III, and V of Appellant's Reply Brief, and hereby adopts those sections.
[2] As defined elsewhere in the briefing.
[3] Appellee's Brief at p. 5.
[4] Appellant's Reply Brief at p. 5.

1

{01532411-1 }

order are clear and unambiguous, and by seeking sanctions for a violation of the discharge injunction, Appellees raised the issue of whether the debts in question were discharged.

Sections 524(a)(1) and (2) of the Bankruptcy Code are not in conflict with Rule 4007(b) of the Federal Rules of Bankruptcy Procedure. Those paragraphs state the effect of a discharge order on the "debt discharged," and enjoin efforts to collect "such debt," but they say nothing about debts that are simply not discharged, due to the operation of any of the various paragraphs of § 523 (other than §523(a)(2), (4), or (6)). That is why a student loan lender, a tax collector, or a creditor such as Appellant can proceed with collection efforts on non-discharged debt without first seeking any determination about dischargeability. They do so at their own peril, because if a court eventually determines that the debt was discharged, then they are subject to sanction. But the sanction can come **only after** the court determines whether the debt was discharged.

Appellees cite to cases from within the Tenth Circuit that suggest a presumption of dischargeability arises. In every case of which the undersigned counsel is aware, when a court has suggested that a presumption of dischargeability arises, it has done so in the context of § 523(c), which sets forth the specific rules applicable only to issues of non-dischargeability under § 523(a)(2), (4), and (6). The language of § 523(c) is the language that gives rise to the presumption in those situations:

> …the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, **unless, on**

2

**request of the creditor** to whom such debt is owed, and **after notice and a hearing**, the **court determines** such debt to be excepted from discharge …

From this language, it is unsurprising that a court would find a presumption of dischargeability arises in the context of a claim of a non-dischargeable debt under § 523(c), up until the time a court determines the dischargeability question. But there is absolutely no reason why the presumption created by that statutory language should extend to cases, such as those in the present case, that are not subject to the limitations of § 523(c).

Without the benefit of such a presumption, all Appellees' arguments, and even the bankruptcy court's ruling, regarding Appellant's failure to follow procedural formalities, fail. There was no deadline by which anybody had to bring an action to determine dischargeability,[5] so there was not temporal procedural failure. Counsel argued that the debts in question were non-dischargeable, so there was no waiver of argument amounting to a procedural failure. Whether sufficient evidence was presented or not, there was no evidentiary procedural failure because the court expressly declined to make a finding about dischargeability. Simply put, it was incumbent upon the party seeking a sanction for violation of a discharge injunction to prove that the debt in question was actually discharged. If procedural requirements necessitated filing an adversary proceeding in order to obtain such a ruling, that burden fell to the party seeking the sanction. Regardless

---

[5] Fed. R. Bankr. P. 4007(b).

3

{01532411-1 }

of whether an adversary proceeding was required, at the very least a finding of dischargeability by the sanctioning court was required.[6]

Both Appellees and Appellant have suggested that an offhanded remark at a hearing more than 3 years prior to the hearings in question somehow shifted the procedural burden to Appellant. In fact, the discussion at the 2014 hearing was never put into the record of the 2017 hearings on sanctions. Only the facts that some stay relief litigation had occurred in 2014, and an order had issued from the bankruptcy court at that time, were referenced in the 2017 hearings. Therefore, there is absolutely no basis to suggest that Appellant's counsel's statement of his belief in 2014 was the basis for Judge Thurman to decide in 2017 that he didn't need to determine the dischargeability of the debts in question before sanctioning Appellant for seeking to collect a supposedly-discharged debt in violation of the discharge order. In citing the text of oral argument from 2014, both Appellant and Appellees are conjuring an erroneous post hoc justification for simple legal error.

Appellant also argues against his own position in paragraph IV. of his reply, suggesting that Appellee's failure to bring an adversary proceeding to determine dischargeability is excused based on some supposed reliance on *Eastburg v. Eastburg (In re Eastburg)*.[7] There is in fact no evidence in the record that Appellees or their counsel

---

[6] In fact, the Court should have denied the motion and invited the debtors to file an adversary proceeding, as the court did in *C & W Asset Acq. V. Feagins (In re Feagins)*, 439 B.R. 165 (Bankr. D. Haw. 2010).
[7] 447 B.R. 624 (10th Cir. BAP 2011).

were aware of the *Eastburg* case in 2017, and even if they were, any reliance thereon was misplaced based on the distinction between § 523(c) circumstances in that case, and non-§ 523(c) factors in the present case.

If the law were as Appellees suggest, one would expect that the Order of Discharge would read quite differently. Instead of stating, "Most debts are covered by the discharge, but not all[,]"[8] the Order of Discharge might have read, "All debts are presumptively discharged, unless you seek and obtain a court order excepting the debt from discharge." In listing the types of debts that are not discharged, the Order of Discharge includes as one category among several, "debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case." But the fact that that category is listed as only one among several (including domestic support obligations and debts for damages arising from malicious or willful injury) is strong evidence that those listed in the other categories do not require a decision by the bankruptcy court in order to be non-dischargeable, nor are they protected by a presumption to that effect. The Order of Discharge is an unambiguous statement that there is no presumption that debts are non-dischargeable.

## Conclusion

For these reasons, the Court should rule that the bankruptcy court could not sanction Appellant without first making a determination about whether the debts

---

[8] Aplt.'s Appx. at 103.

Appellant sought to collect were dischargeable, and because such a determination requires an adversary proceeding, the Court should reverse with instruction to dismiss the motion for sanctions without prejudice to allow Appellee to file an adversary proceeding.

DATED this 21st Day of June, 2019

CLYDE SNOW & SESSIONS

/s/ T. Edward Cundick
Counsel to Amicus Curiae Albert Pranno
